RECORD NO. 13-1594

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

STEVEN LINCOLN,

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
CERES MARINE TERMINALS, INC.,

*Respondents.*

ON PETITION FOR REVIEW FROM THE BENEFITS REVIEW BOARD

## OPENING BRIEF FOR PETITIONER

Gregory E. Camden
Montagna Klein Camden LLP
425 Monticello Avenue
Norfolk, VA 23510
Telephone: (757) 622-8100
Facsimile: (757) 622-8180
gcamden@mkclawyers.com

*Counsel for Petitioner*
*Steven Lincoln*

June 17, 2013

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 13-1594       Caption: Steven Lincoln v. DOWCP

Pursuant to FRAP 26.1 and Local Rule 26.1,

Steven Lincoln
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                               ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____05/13/2013_____

Counsel for: Steven Lincoln

## CERTIFICATE OF SERVICE
**************************

I certify that on _____May 13, 2013_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Betty English, Esquire: BLLS-SOL@dol.gov

Thomas O. Shepard, Jr.: shepherd.thomas@dol.gov

Lawrence Postol, Esquire: lpostol@seyfarth.com

Mark Reinhalter, Esquire: blls-sol@dol.gov

_____                _____05/13/2013_____
          (signature)                                  (date)

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . .2

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

STATEMENT OF FACTS AND PROCEDURE . . . . . . . . . . . . . . . . . . . . .6

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    I.     The Employer's payment was a farce to manipulate the statute and
         avoid paying attorney's fees.. . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    II.    The statutory meaning of "any compensation" as used in 33 U.S.C.
         Section 928(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    III.   In the alternative, the Employer's controversion triggered Section
         928(a) even if 0.50% was payment of compensation . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF FILING AND SERVICE . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

*American Stevedores, Inc. v. Salzano*,
   538 F.2d 933, 4 BRBS 195 (2d Cir. 1976), *aff'g* 2 BRBS 178 (1975) ……...19

*Baker v. Todd Shipyards Corp.*,
   12 BRBS 309 (1980) …………………………………………………………19

*Consolidated Edison Co. v. NLRB*,
   305 U.S. 197, 229 (1938), *cert. denied*, 114 S. Ct. 191 (1993) …………..9, 10

*Davis* v. *Michigan Dep't of Treasury*,
   489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989) ……………17

*Day v. James Marine, Inc.,*
   518 F.3d 411, 42 BRBS 15(CRT) (6th Cir. 2008) …………………………19

*Elliott v. Administrator, Animal & Plant Health Inspection Service*,
   990 F.2d 140, 144 (4th Cir. 1993) ………………………………………..9

*Gilchrist v. Newport News Shipbuilding & Dry Dock Co.,*
   135 F.3d 915, 918 (4th Cir. 1998) ………………………………………..9

*Green v. Ceres Marine Terminals, Inc.,*
   43 BRBS 173 (2010), *rev'd on other grounds,* 656 F.3d 235, 45 BRBS 67
   (CRT) (4th Cir. 2011) …………………………………………...1, 5, 6, 10, 15

*Ingalls Shipbuilding, Inc.* v. *Director, Office of Workers' Compensation Programs*,
   519 U. S. 248, 255, 117 S. Ct. 796, 136 L. Ed. 2d 736 (1997) ……………...16

*Meszaros v. Federal Marine Terminals, Inc.,*
   BRB No 10-0589 (June 9, 2011) ……………………………………...6, 21

*Moskal* v. *United States*,
   498 U. S. 103, 108, 111 S. Ct. 461, 112 L.Ed. 2d 449 (1990) ………………17

*Pool Company v. Cooper*,
   274 F.3d 173, 186, 35 BRBS 109(CRT) (5th Cir. 2001) …………………...18

*Potomac Electric Power Co. v. Director, OWCP*,
    449 U.S. 268 (1980) …………………………………………………..9

*Roberts v. Sea-Land Services, Inc.,*
    132 S. Ct. 1350, 182 L.Ed. 2d 341 (2012) …………………………1, 5, 13, 15

*Robinson* v. *Shell Oil Co.*,
    519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) ………………16

*W.G. [Gordon] v. Marine Terminals Corp.,*
    41 BRBS 13 (2007) ………………………………………………...19

## Statutes and Regulations

20 C.F.R. 702.134(a) …………………………………………………...19
33 U.S.C. §901…………………………………………………...1, 2
33 U.S.C. §908(i) ………………………………………...………7
33 U.S.C. §912………………………………………………………19
33 U.S.C. §914………………………………………………………19
33 U.S.C. §914(b) …………………………………………………22
33 U.S.C. §914(d) …………………………………………………20
33 U.S.C. §921(b)(3) …………………………………………1, 9
33 U.S.C. §921(c) …………………………………………………..1
33 U.S.C. §928(a) ………………………2, 5, 6, 8, 10, 11, 14, 16, 18, 19, 20, 21, 22
33 U.S.C. §928(b) …………………………………………...2, 8, 9, 17, 18, 21, 22
33 U.S.C. §928(h) ………………………………………………….....1

## Other Authorities

Black's Law Dictionary, 94 (6th ed. 1990) ………………………………...19

Black's Law Dictionary, 813 (7th ed. 1999) ………………………………10

Merriam-Webster, http://www.merriam-webster.com/dictionary (visited June 10,
2013) …………………………………………………………….......10

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This case arises under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901. *et seq*. ("Act"). The Office of Workers' Compensation Programs ("OWCP"), Sixth Compensation District, had jurisdiction to hear the claim pursuant to 33 U.S.C. Section 928(h). The Benefits Review Board ("Board") had jurisdiction to hear the appeal from the OWCP's decision, pursuant to 33 U.S.C. §921(b)(3). Jurisdiction is proper before this court upon the Claimant's Petition from the Board pursuant to 33 U.S.C. §921(c).

On May 3, 2012 the OWCP issued an order finding Claimant's request for an attorney fee does not fall within the issues addressed by the Board in the matter of *Green v. Ceres Marine Terminals, Inc.,* 43 BRBS 173 (2010) or the Supreme Court of the United States ruling in *Roberts v. Sea-Land Services, Inc., et. al.,*132 S. Ct. 1350, 182 L. Ed. 2d 341 (2012). On April 16, 2013 the Board affirmed the decision of the OWCP findings.

The Petitioner, Steven Lincoln, filed his Petition for Review to the United States Court of Appeals for the Fourth Circuit on May 2, 2013, within sixty (60) days after the entry of the Board's order.

## STATEMENT OF ISSUE PRESENTED

**I.     Whether the OWCP and the Board erred in finding that Employer's disingenuous payment of 0.50% impairment to Claimant triggered the removal of assessment of attorney's fees from 33 U.S.C. Section 928(a) to 928(b)?**

**II.    What is the statutory meaning of "any compensation" as used in 33 U.S.C. Section 928(a)?**

**III.   Whether the Employer's controversion triggered Section 928(a) even if 0.50% was payment of compensation?**

## STATEMENT OF THE CASE

This matter arises from a claim filed by Steven Lincoln ("Claimant" or "Mr. Lincoln") against Ceres Marine Terminals, Inc., under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901 *et. seq.* ("Act").

On April 11, 2011 Mr. Lincoln was diagnosed with a binaural noise-induced hearing loss while employed by the Employer. On May 24, 2011 Claimant filed a claim with the Office of Workers' Compensation Programs. (JA 1-2).[1] On May 26, 2011 Employer filed Form LS-202 and Form LS-207. (JA 3).[2] On the LS-207, the

---

[1] Reference made to Joint Appendix is referenced as JA.

[2] LS 202 is a Department of Labor form entitled Employer's First Report of Injury or Occupational Illness. The form directs the Employer to file this form with the District Director within 10 days from the date of injury or death or from the date the Employer first has knowledge of an injury or death.

LS 207 is a Department of Labor form entitled Notice of Controversion of Right to Compensation. This form is used by the Employer to controvert the right to

2

Employer admitted that it had first knowledge of the claim on May 26, 2011. (JA 5). The Employer indicated that the right to compensation is controverted for the following reasons:

> "Ceres accepts claimant's hearing loss in (sic) noise-induced. Ceres needs to confirm it is liable employer, (last employer before audiogram), the AWW and extent of hearing loss. Ceres expects to be able to do this within 30 days of service of claim by DOL on Ceres, and will pay what Ceres believes is proper extent of PPD. If Ceres cannot get IME completed within 30 days, but it appears hearing loss is likely at least 1%, then Ceres will pay a 1% award, then pay balance once IME report is received." (JA 5).

On June 2, 2011 Claimant submitted to the Employer's workers' compensation department a copy of the audiogram and paystubs documenting employment with Employer. (JA 6-11). On June 3, 2011 Employer's counsel noted his appearance as the legal representative for Employer. (JA 12). On June 6, 2011 Employer's counsel submitted six (6) subpoenas to the Chief Administrative Law Judge ("ALJ") seeking work records "complete records, showing what days Steven Lincoln (DOB: 2/22/61) worked for you, and how much he was paid, from 4/11/10 to 4/11/11" from Ports America, SSA Cooper, LLC, Universal/APM, Marine Terminals Corporation. (JA 13-17, 18). The Employer also sought "complete

---

compensation. The form advises the Employer that in accordance with 33 USC 914(a) requires the Employer to pay compensation promptly and without an award unless the right to such compensation is controverted. Failure to either pay each installment of compensation or controvert the right to such compensation, within 14 days after it becomes dues may result in a 10% penalty.

records, showing what days Steven Lincoln (DOB: 2/22/61) worked from 4/11/10 to 4/11/11, and how much he earned during that time from ILA Pension Welfare Vacation Fund. (JA 17). Lastly, the Employer requested medical records, hearing tests, audiograms, billing records, office notes, correspondence, disability slips, insurance forms, and doctor/hospital records regarding Mr. Lincoln from Dr. Kristin Bish. (JA 19).

On June 14, 2011, the OWCP submitted Letter LS-215b advising Claimant that the Employer denied his claim. (JA 20-23). On July 8, 2011 the Employer filed an LS-208 indicating that the "Employer voluntarily paid 0.5% bi-nu hearing loss PPD" in the amount of $1,256.84. (JA 24-25). The Employer did not make any other payments and did not authorize medical treatment until a Compensation Order Settlement-Section 8(i) was entered on October 4, 2011. (JA 26). The parties agreed that Claimant would receive $23,879.96 for all past, present, and future compensation in addition to the $1,256.94 already paid, and $4,000.00 for all past, present, and future medical benefits. The parties also agreed that attorney's fees would be determined by the OWCP. (JA 26-28).

Claimant's attorney submitted a fee petition for work performed in this case requesting an attorney fee in the amount of $3,460.00. The Employer objected to Claimant's counsel's fee petition stating that it paid compensation within 30 days of

service of the claim, and that since there was no informal conference held, the Employer never rejected an OWCP recommendation. However, Claimant contends that Section 928(a) was triggered in this matter by the filing of the LS-207 and the Employer's payment of 0.50% rating was just a farce to avoid attorney's fees. (JA 42-48).

On April 24, 2012 the District Director concluded that payment of $1,256.94 to Claimant brought this claim under the guidelines of Section 928(b), thus, the Employer is not liable for the attorney fee. (JA 29-30). The District Director concluded that "one week payment of compensation at the maximum applicable rate. (sic) Along with the indication of acceptance of the claim pending medical verification of the loss is sufficient to establisht (sic) the intent to pay." (JA 29).

On May 3, 2012 the District Director issued a Finding of Fact determining that "this attorney fee does not fall within the issues addressed by the Board in Green v. Ceres or The Supreme Court in Roberts v. Sea-Land Services." (JA 82).

On May 15, 2012 the District Director entered a Compensation Order denying an Employer paid attorney fee. (JA 86).

Claimant appealed this finding to the Board alleging error of the District Director's interpretation that Employer's payment to Claimant in the amount of $1,256.94 for a 0.50% impairment constituted actual compensation as opposed to a

nominal payment. The Board found that the District Director acted within his discretion in finding the amount of $1,256.94 constituted payment of actual compensation as compared to the nominal $1.00 amount paid in *Green v. Ceres Marine Terminals, Inc.,* 43 BRBS 173 (2010), *rev'd on other grounds,* 656 F.3d 235, 45 BRBS 67 (CRT) (4th Cir. 2011). Moreover, the Board determined that the District Director did not err in considering the Board's unpublished decision in *Meszaros v. Federal Marine Terminals, Inc.,* BRB No 10-0589 (June 9, 2011). Lastly, the Board found that "pursuant to the plain language of Section 28(a), it is employment's payment or non-payment of 'any compensation' in the 30 days after its receipt of the claim on which employer's liability for a fee pursuant to Section 28(a) is predicated." (JA 92-95).

On May 2, 2013 Claimant appealed the Board's finding to the United States Court of Appeals arguing that Employer's disingenuous payment of 0.50% impairment failed to meet the threshold of any compensation as used in 33 U.S.C. Section 928(a). (JA 96-98).

## STATEMENT OF THE FACTS AND PROCEDURE

Claimant filed a claim for a work related binaural hearing loss claim on May 24, 2011 alleging permanent partial disability for a 10% binaural hearing loss. On May 26, 2011 the Employer filed its First Notice of Injury and Notice of

6

Controversion forms. On June 14, 2011 the District Director served Employer with formal notice of Claimant's claim. On July 8, 2011 Employer filed Form LS-208 indicating that it had voluntarily paid Claimant permanent partial disability benefits for a 0.5% binaural hearing loss in the amount of $1,256.84, based on the maximum compensation rate. Employer made no additional payments and did not authorize medical treatment until an Order was entered on October 4, 2011 approving the parties' Section 8(i) settlement. Claimant received $23,879.96 in compensation for a 10% binaural hearing loss and $4,000.00 for medical benefits.

On August 18, 2011 Claimant's counsel filed a fee petition with the District Director requesting $3,460.00 for 11.26 hours of attorney services rendered at an hourly rate of $350.00. Employer objected to the fee petition contending it was not liable for any attorney's fees because it paid compensation within 30 days, and that if found that Claimant's counsel was entitled to an attorney fee, the requested $350.00 an hour was excessive.

The District Director found that Employer's payment to Claimant of $1,256.94 for a 0.50% impairment constituted "actual compensation," as opposed to a nominal payment. Claimant appealed this finding urging the Board to reverse the District Director's finding.

The Board agreed with the District Director finding that the District Director

acted within his discretion in finding the amount paid to Claimant constituted a

payment of actual compensation and was not a nominal amount. Claimant now seeks

this Court's review of the Board's April 16, 2013 decision.

### SUMMARY OF THE ARGUMENT

This is a Longshore and Harbor Workers' Compensation Act claim appealing

the compensation order award of attorney's fees of District Director Charles Lee

who determined that the Employer's payment to Claimant of $1,256.94 for a 0.50%

impairment constituted "actual compensation" as opposed to a nominal payment.

The Board affirmed the fee award of the District Director based upon the Employer

paying Claimant compensation within the 30 days period after its receipt of the

claim, thus, the Board affirmed the denial of an employer-paid attorney's fee under

Section 928(a).

Claimant argues that the Employer's nominal payment of 0.50% was a farce

to manipulate the statute for purposes of avoiding paying attorney's fees which

serves as an injustice for injured workers. Moreover, Claimant argues that

Claimant's counsel is entitled to an attorney's fee pursuant to Section 28(a) and the

District Director's finding that Section 28(b) is applicable in this matter is without

merit because the Employer declined to pay compensation on or before the 30 days

after receiving written notice of the claim and the Employer never tendered "any

8

compensation" to trigger Section 28(b) of the Act.

## ARGUMENT

## STANDARD OF REVIEW

The Court of Appeals for the Fourth Circuit reviews the Board's decisions for errors of law and to ascertain whether the Board adhered to its statutorily mandated standard for reviewing the ALJ's factual findings. *Gilchrist v. Newport News Shipbuilding & Dry Dock Co.,* 135 F.3d 915, 918 (4th Cir. 1998). The Act sets out the applicable standard of review for this case in §921(b)(3).   When under review by the Board, the ALJ's factual findings are deemed conclusive "if supported by substantial evidence in the record considered as a whole." 33 U.S.C §921(b)(3).

However, this Court reviews the Board's interpretation of the Act *de novo*, because the Board is not a policy making agency and its statutory interpretation is thus not entitled to a special deference from the court. *Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 279 n.18 (1980) and *Gilchrist*, 135 F.3d at 918.

Notably, the Fourth Circuit adopted and elaborated upon this definition when it described "substantial evidence" as "more than a scintilla but less than a preponderance...such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Elliott v. Administrator, Animal & Plant Health Inspection Service*, 990 F.2d 140, 144 (4th Cir. 1993) (quoting *Consolidated Edison*

9

*Co. v. NLRB*, 305 U.S. 197, 229 (1938), *cert. denied*, 114 S. Ct. 191 (1993).

### I.    The Employer's payment was a farce to manipulate the statute and avoid paying attorney's fees.

Section 928(a) provides for attorney's fees as follows:

> If the employer or carrier ***declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed*** from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorneys fee against the employer[.] (emphasis added).

The District Director found that the 0.50% payment establishes the intent to pay by the Employer. Black's Law Dictionary defines "intent" as a "the state of mind accompanying an act." Black's Law Dictionary, 813 (7th ed. 1999). According to Merriam-Webster, intent is defined as "the act or fact of intending; *especially,* the design or purpose to commit a wrongful or criminal act, the state of mind with which an act is done; a usually clearly formulated or planned intention." www.merriam-webster.com/dictionary/intent (last visited June 10, 2013). Here, the Employer never intended to actually resolve the issue, but rather, the intent behind the Employer's action was merely a farce to avoid paying attorney's fees.

This type of behavior from the Employer is nothing new as evident in *Green v. Ceres Marine Terminals, Inc.,* 43 BRBS 173 (2010), *rev'd on other grounds*, 656

10

F.3d 235, 45 BRBS 67(CRT) (4th Cir. 2011). In *Green*, the same Employer as in this matter, controverted Claimant's claim and, upon receiving written notice of the Claimant's claim, voluntarily paid Claimant the amount of a single dollar ($1.00) for their "intent to pay." The Employer made no additional payments to Claimant in connection with his injury and continued to contest the claim outright. The ALJ found that Employer contested Claimant's right to compensation by filing a notice of controversion before the expiration of the thirty day period in Section 928(a) and that the $1.00 payment did not represent an intent to pay compensation. Thus, the ALJ found the Employer liable for Claimant's attorney's fee pursuant to Section 928(a). *Green at* 177.

The Board affirmed the ALJ's finding that Employer's payment of $1.00 does not preclude the applicability of Section 928(a), as the ALJ rationally found that Employer's payment of $1.00 was merely an attempt to avoid fee liability rather than the payment of compensation for Claimant's injury. The Board found that as Employer did not pay Claimant any compensation within the meaning of Section 928(a) of the Act and in fact controverted the claim prior to receiving notice of the claim; the ALJ properly held that the Employer was liable for Claimant's attorney's fee pursuant to Section 28(a). *Green at 177.*

Unfortunately, this type of behavior by the Employer has been noted in

11

previous claims as evident from several LS-207s in other cases where the Employer herein utilized the same tactics. (JA 32-41). Regrettably, each of the eight (8) LS-207s contain the same **exact** language, that the Employer (the same as in this case), "accepts claimant's hearing loss is noise-induced. Ceres needs to confirm it is liable employer (last employer before audiogram), the AWW and extent of hearing loss. Ceres expects to be able to do this within 30 days of service of claim by DOL on Ceres, and will pay what Ceres believes is proper extent of PPD. If Ceres cannot get IME completed within 30 days, but it appears hearing loss is likely at least 1%, then Ceres will pay a 1% award, then pay balance once IME report is received." (JA 32-41).

If this tactic is condoned by this Court, this is what the future will be like for all Claimants under the Act. Claimants will receive 0.50% or 1% or maybe if they are lucky, 5%, of what they are entitled to. Essentially, the Employer will be allowed to get away with paying mere pennies on what the Claimant is owed. What about the Claimants who are out of work and receive no benefits, but the 1% the Employer "believes" they are entitled to? What happens when there is a claim for $100,000.00 and the Employer only pays the Claimant $1,000.00? Meanwhile, these cases are litigated for years until a final decision can be entered.

Ironically the United States Supreme Court recently debated whether an

Employer would stoop to this kind of behavior in a Longshore claim addressing the maximum compensation rate. The decision of *Roberts v. Sea-Land Services, Inc.,* 132 S. Ct. 1350, 182 L. Ed. 2d 341 (2012), involved the issue of how the maximum compensation rate should be applied in workers' compensation claims.

Pointedly, on page 10 in footnote number 6, the Majority's Opinion addresses the Court's concern that Employer would hedge against increases in the maximum compensation rate by "paying the smallest amount to which the Act might entitle the employee, but controverting liability as to the remainder…employer who controverts is not subject to the Act's delinquency penalty."

In a concurring opinion of Justice Ginsburg, on page 7 at footnote 4, she addressed the Majority's concerns about the Employer circumventing their approach by stating "the prospect that an employer could successfully execute, or would even attempt, such a strategy is imaginary. Employers who make voluntary payments to employees are required to file a report with the Department of Labor describing the nature of the of the employee's injury and stating the amount of the payments made…chances are slim that a claim's examiner would validate a substantial underpayment…***the Act does not permit an employer to pay any amount it likes and controvert the remainder***." (emphasis added).

The scheme that Justice Ginsburg found to be imaginary in *Roberts* is the

13

same scheme being used by the Employer in this matter to avoid attorney's fees. The Supreme Court of the United States has demonstrated great concern regarding employers using this sort of tactic. Clearly, the Supreme Court of the United States will not tolerate this type of behavior from the Employer nor should the Fourth Circuit Court of Appeals.

Unfortunately, District Director Lee's decision, and the Board's affirmance, allows the Employer to pay pennies on the dollar to the Claimant while skirting around paying attorney's fees. The whole purpose of Section 928(a) is to bind the Employer to make a reasonable effort to accept or deny a claim, not come up with an imaginary number, i.e., 0.05% of a 10% hearing loss claim, solely to evade paying an attorney fee.

The ruling of the OWCP, and the Board's affirmance of that ruling, set forth a precedent that it is conscionable for the Employer to pick and choose any amount of compensation it sees fit to pay the Claimant regardless of whether that amount is reasonable. Then the Employer is able to dispute the remaining amount and force the Claimant to pursue litigation to obtain the actual benefits he is entitled to as a result of his compensable injury. Had Claimant's counsel not pursued this case, Claimant would have received a measly $1,256.94 in benefits instead of the total amount owed of $27,879.96. The whole purpose of the Act is to protect injured workers and

14

ensure that justice is rendered.

If this dangerous precedent is set every single employer would undoubtedly pay whatever amount it sees fit to pay Claimant whether its 0.05% of the claim or $100.00 or even $1000.00. What would curtail Employers from ever making a reasonable intent to pay compensation if they are protected by a precedent that allows for this type of behavior?

It is truly regrettable that the Employer can make up any imaginary number, such as 1%, in an attempt to tweak the same argument they previously made in *Green* without any medical evidence to support its claim. The Employer was chastised by the Board when it paid a single dollar payment to *Green*. Since that did not work, the Employer made another attempt to avoid attorney's fees by choosing to pay 0.50% in disability.

The Employer is simply trying to skirt around the law to avoid payment of attorney fees. There is no basis or analysis to support the Employer's obvious "cut and paste" tactic in denying every claim that involves Ceres Marine Terminals. The Employer's blatant disregard for the integrity of the Act should not be allowed just as the Supreme Court of the United States would not allow the Employer and insurance carrier to tread on the Act in *Roberts.*

Moreover, when the Employer filed its' Notice of Controversion on May 26,

15

2011, the Employer indicated that it would accept a 1% award. (JA 5). However, on the LS-208 that was filed on July 7, 2011 indicates that the Employer only actually paid 0.50% as payment. (JA 25). Mindfully, the payment was paid to Claimant on July 7, 2011, approximately 6 weeks after the Employer received notice of Claimant's claim. The Employer admits it had first knowledge of Claimants' injury on May 26, 2011.

Ironically, the Employer did not even pay what it originally believed the claim was worth. Thus, since they did not tender their own value of the claim, it should be found that the Employer remains responsible for payment of attorney's fees under Section 928(a). Clearly, the Employer is attempting to dodge liability of attorney's fees by paying only a nominal payment of compensation after controverting the claim.

## II.    The statutory meaning of "any compensation" as used in 33 U.S.C. Section 928(a).

When determining whether the Employer paid "any compensation," one must first consider "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). While the Act does not define "actual compensation," in construing the Act, as with any statute, "we look first to its language, giving the words used their ordinary meaning." *Ingalls Shipbuilding,*

*Inc.* v. *Director, Office of Workers' Compensation Programs*, 519 U. S. 248, 255, 117 S. Ct. 796, 136 L. Ed. 2d 736 (1997) (quoting *Moskal* v. *United States*, 498 U. S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990)).

Statutory language, however, "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis* v. *Michigan Dep't of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989).

The Employer contends that it accepted the injury as compensable and paid "some" compensation within 30 days of service of the claim. Specifically, the Employer contends that it paid a 0.50% rating on July 7, 2011, thus, this case falls under Section 928(b) of the Act. However, what is missing from this analysis is payment of "any compensation."

The District Director determined that "I am of the opinion that one week payment of compensation at the maximum applicable rate. (sic) Along (sic) with the indication of acceptance of the claim pending medical verification of the loss is sufficient to establisht (sic) the intent to pay. Therefore it [is] my recommendation that the payment of $1,256.94, maximum compensation rate, bring[s] this claim under the guides of Section 28(b). The employer is not liable for the attorney fee."

17

(JA 29).

However, Section 928(b) is not applicable to this matter and should have never been considered. Rather this case should have been analyzed under Section 928(a) which states:

> "***If the employer or carrier declines to pay any compensation*** on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this Act, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final." (emphasis added).

This section plainly reflects that where the Employer denies ANY benefits claimed in the initial claim and if the Claimant's attorney prevails in obtaining benefits, his reasonable fee will be paid by the employer in addition to the Claimant's award. See *Pool Company v. Cooper*, 274 F.3d 173, 186, 35 BRBS 109(CRT) (5th Cir. 2001).

Section 928(a) of the Act provides that the Employer is responsible for a reasonable attorney's fee in addition to the compensation award when it declines to pay "any compensation" on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner and

18

thereafter Claimant utilizes the services of an attorney in the successful prosecution of his claim. *American Stevedores, Inc. v. Salzano*, 538 F.2d 933, 4 BRBS 195 (2d Cir. 1976), *aff'g* 2 BRBS 178 (1975); *see* 20 C.F.R. 702.134(a).

Generally, Section 28(a) applies when an Employer declines to pay any benefits within 30 days of receiving notice of the claim, while Section 28(b) applies where Employer begins paying benefits voluntarily, *see* 33 U.S.C. 914, and a controversy then arises regarding Claimant's entitlement to benefits. *See Day v. James Marine, Inc.,* 518 F.3d 411, 42 BRBS 15(CRT) (6th Cir. 2008); *W.G. [Gordon] v. Marine Terminals Corp.,* 41 BRBS 13 (2007); *Baker v. Todd Shipyards Corp.*, 12 BRBS 309 (1980).

Here, within thirty (30) days of receiving written notice of Claimant's claim, the Employer paid only 0.50% of the value of the claim. Therefore, the Employer declined to pay 9.5% of the total claimed value. By declining to pay 9.5% of the claim, the Employer triggered Section 928(a) because it failed to pay "any compensation." Any is defined by Black's Law Dictionary as "work 'any' has a diversity of meaning and may be employed to indicate 'all' or 'every' as well as 'some' or 'one' and its meaning in a given statute depends upon the context and the subject matter of the statute." Black's Law Dictionary, 94 (6th ed. 1990).

Reading the term "any compensation" in the context of the statute describing

"after receiving written notice of the claim," the legislative branch clearly meant that the denial of "any compensation" claimed in the claim would trigger the Section 928(a). Therefore, when the Employer only paid part of the compensation claimed it refused to pay "any compensation" and triggered Section 928(a).

**III.    In the alternative, the Employer's controversion triggered Section 928(a) even if 0.50% was payment of compensation.**

If an Employer declines to voluntarily pay compensation or otherwise disputes compensation claimed, it must file with the OWCP, a Notice of Controversion of Right to Compensation within 14 days of when the Employer learned of the injury or death. Thus, the purpose of an LS-207 is for the Employer to put the Claimant on notice that they are controverting or disputing the right to compensation and/or medical benefits under the Act.

In fact, Section 914(d) of the Act sets out the procedure which must be followed to timely controvert the right to compensation. Under Section 914(d), if Employer controverts the right to compensation, it must file a notice on or before the 14th day after it has knowledge of the alleged injury or death or is given notice under Section 912.

On May 26, 2011, the carrier filed a Notice of Controversion of Right to Compensation (Form LS-207). Therefore, Section 928(a) is triggered. The Act does not allow the insurance carrier to then go back and unring the bell by paying

20

compensation on a later date. Following the language of the statute, there is nothing in Section 928(a) that allows an Employer to uncontrovert a claim during the initial 30 days as the Employer attempted to do in this matter.

Based upon the insurance carrier's controversion on May 26, 2011, Section 928(a) was triggered before the thirtieth day after receiving written notice of the claim. Therefore, this claim falls under Section 28(a) of the Act because the Employer declined to pay any compensation on or before the thirtieth day after receiving written notice of the claim.

The District Director relied upon the case of *Meszaros v. Federal Marine Terminals*, BRB No. 10-0589 (2011), alleging that since the Employer made a payment within 30 days of notice, the Employer met the requirements of the BRB's finding that Section 928(b) applies since some compensation was paid. Even if you can unring the bell after controverting a claim the *Meszaros* analysis is not applicable to this case. Section 928(b) states:

> If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy. If the employer or carrier refuses to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept

21

such payment or tender of compensation, and thereafter utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorneys fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation . In all other cases any claim for legal services shall not be assessed against the employer or carrier.

In this case, the Employer never met the requirements of Section 14(b) and

therefore the case never moved from Section 928(a) to Section 928(b). Section

914(b) states:

The first installment of compensation shall become due on the fourteenth day after the employer has been notified pursuant to section 912 of this title, or the employer has knowledge of the injury or death, *on which date all compensation then due shall be paid.* (Emphasis added).

The Employer had knowledge of the injury on May 26, 2011. (JA 3).

However, the Employer did not make payment until July 7, 2011. (JA 24). Since

payment was not made within 14 days of knowledge of the claim, and the Employer

did file a notice of controversion within 30 days of notice of the claim, Section

914(b) was not met and the case never moved from Section 928(a) to Section 928(b).

## **CONCLUSION**

Wherefore, based upon the foregoing argument and authorities, Claimant

respectfully requests that this Honorable Court reverse the Board's decision which

affirmed the OWCP's Decision and Order denying Claimant's counsel's attorney

fee.

22

Respectfully Submitted,

Steven Lincoln,

/s/ _____
Gregory E. Camden, Esquire
VSB #: 36954
Counsel for Petitioner
425 Monticello Avenue
Norfolk, Virginia 23510
Phone #:    (757) 622-8100
Fax #:    (757) 622-8180
Email:    gcamden@mkclawyers.com

23

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7) because this brief has been prepared in Microsoft Word, Times New

Roman, 14 point, a proportionally spaced font and contains 5316 words excluding

the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/_____
Gregory E. Camden, Esquire

24

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing Opening Brief of Petitioner, Steven Lincoln, with the Clerk of the United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the CM/ECF system, which will send notification of such filing to the following:

Lawrence Philip Postol
Seyfarth & Shaw, LLP
975 F. Street, NW
Washington, DC 20004-1454
lpostol@seyfarth.com

*Counsel for Petitioner*

Mark A. Reinhalter
Rita Roppolo
United States Department of Labor
Office of the Solicitor, Room N-2117
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210
blls-sol@dol.gov

*Counsel for Director, OWCP*

This the 17th day of June 2013.

/s/_____
May Serafim
Lantagne Legal Printing
(804) 644-0477

25