# No. 13-1594

## In the United States Court of Appeals for the Fourth Circuit

STEVEN LINCOLN,

*Petitioner*,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
U.S. DEPARTMENT OF LABOR; CERES MARINE TERMINALS, INC.,

*Respondents*.

**On Petition For Review Of An Order
Of The Benefits Review Board**

**RESPONSE BRIEF OF RESPONDENT CERES**

LAWRENCE P. POSTOL, ESQ.
SEYFARTH SHAW, LLP
975 F Street, N.W.
Washington, DC  20004-1454
Direct:  202-828-5385
Email:  Lpostol@seyfarth.com

Attorneys for Respondent Ceres

Dated:  July 10, 2013

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>13-1594</u>          Caption: <u>Steven Lincoln vs. Director, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Ceres Marine Terminals, Inc.</u>
(name of party/amicus)

_____

who is _____<u>Respondent</u>_____, makes the following disclosure:
    (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?
                                               ☐YES ☒NO

2.  Does party/amicus have any parent corporations?          ☒YES ☐NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

    **Owned by Ceres Terminals, Inc., which is owned by Nippon Yusen Kaisha (NYK) Corporation.**

13717627v.5 / 71209-000641

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☒YES ☐NO
   If yes, identify all such owners:

   **Nippon Yusen Kaisha (NYK) Corporation**

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☒NO

5. Is party a trade association?  (amici curiae do not complete this question)
   ☐YES ☒NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member.

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☒NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature:__ **/s/ Lawrence P. Postol**_____     Date:_ July 10, 2013_____

Counsel for: **Ceres Marine Terminals, Inc.**

ii

13717627v.5 / 71209-000641

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on July 10, 2013 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy of the addresses listed below:

Gregory E. Camden, Esquire
Montagna, Klein & Camden
425 Monticello Avenue
Norfolk, VA 23510

Mark A. Reinhalter, Esquire
Rita Roppolo, Esquire
Office of the Solicitor
U.S. Department of Labor
Suite N-2117, NDOL
200 Constitution Avenue, NW
Washington, DC 20210


__/s/ **Lawrence P. Postol**_____          _____7/10/13_____
Lawrence P. Postol                                         (date)

13717627v.5 / 71209-000641

# CERTIFICATE OF INTERESTED PERSONS

*The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2. I have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.*

| | |
|---|---|
| Steven Lincoln | Claimant and Petitioner |
| Ceres Marine Terminals, Inc. | Employer and Respondent |
| Gary A. Steinberg | Director, Office of Workers' Compensation Programs, U.S. Department of Labor |
| Ceres Terminals, Inc. | Parent Corporation of Ceres Marine Terminals, Inc. |
| Nippon Yusen Kaisha (NYK) Corporation | Parent of Ceres Terminals, Inc. |
| Charles Lea | District Director, Office of Workers' Compensation Programs, U.S. Department of Labor |
| Lawrence P. Postol | Petitioner's Counsel |
| Mark A. Reinhalter Rita Roppolo | Respondent Director's Counsel |

/s/ Lawrence P. Postol
Lawrence P. Postol
Attorney of Record for Respondent Ceres

13717627v.5 / 71209-000641

# TABLE OF CONTENTS

PAGE

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
INTERESTS .........................................................................................................i

STATEMENT OF ISSUES ..................................................................................2

STATEMENT OF THE CASE..............................................................................3

STATEMENT OF FACTS ....................................................................................3

SUMMARY OF THE ARGUMENT ....................................................................5

ARGUMENT.........................................................................................................9

I.      STANDARD OF REVIEW:  THE DISTRICT DIRECTOR'S
        DECISION MUST BE AFFIRMED IF IT IS SUPPORTED BY
        SUBSTANTIAL EVIDENCE IN THE RECORD.  THE DISTRICT
        DIRECTOR'S DISCRETIONARY DETERMINATIONS AND
        FACTUAL INFERENCES CANNOT BE CHALLENGED ON
        APPEAL .....................................................................................................9

II.     THE LACK OF THE REJECTION OF AN INFORMAL
        CONFERENCE RECOMMENDATION PRECLUDES AN
        ATTORNEY FEE AWARD ......................................................................12

CONCLUSION...................................................................................................21

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) AND 32(a)..................1

13717627v.5 / 71209-000641

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andrepont vs. Murphy Exploration and Production,
   566 F.3d 415 (5th Cir. 2009) ..................................................................................... 12, 15

Ballard v. Schweiker,
   724 F.2d 1094 (4th Cir. 1984) ...................................................................................... 12

Bath Iron Works Corp. v. White,
   584 F.2d ....................................................................................................................... 11

Consolidated Edison Co. v. NLRB,
   305 U.S. 197 (1938) ..................................................................................................... 10

Daly v. Hill,
   790 F.2d 1071 (4th Cir. 1986) ...................................................................................... 12

Davis v. Eller Co.,
   41 B.R.B.S. 58 (2007) .................................................................................................. 13

Director v. Greenwich Colliers,
   512 U.S. 267, 114 S. Ct. 2251 (1994) .......................................................................... 12

FMC Corp. v. Perez,
   128 F.3d 908 (5th Cir. 1997) ....................................................................................... 12

Green v. Ceres Marine Terminals,
   43 BRBS 173 (2010), rev'd on other grounds, 656 F.3d 235
   (4th Cir. 2011) .............................................................................................................. 16

Meszaros v. Federal Marine Terminals,
   BRB No. 10-0589 (2011) ........................................................................................ 13, 16

Newport News Shipbuilding & Dry Dock Co. v. Director (Hess),
   681 F.2d 938 (4th Cir. 1982) .......................................................................................... 9

Newport News Shipbuilding v. Stilley,
   243 F.3d 179 (4th Cir. 2001) .......................................................................................... 6

*Cases principally relied upon.

13717627v.5 / 71209-000641

Norfolk Shipbuilding and Drydock Corp. v. Faulk,
  228 F.3d 378 (4th Cir. 2000) .............................................................................. 6

*Pittsburgh Conneaut Dock Co. v. Director,
  473 F.3d 253 (6th Cir. 2006) ............................................................................ 12

Richard v. Continental Gram Company,
  336 F.3d 1103 (9th Cir. 2003) .......................................................................... 12

Richardson v. Persales,
  402 U.S. 389 (1971) .......................................................................................... 10

Roberts v. Sea-Land Services, Inc.,
  132 S.Ct. 1350, 182 L. Ed. 2d 341 (2012) ....................................................... 18

Sprague v. Director,
  688 F.2d 862 (1st Cir. 1982) ....................................................................... 10, 11

Travelers Insurance Co. v. Cardillo,
  225 F.2d 137 (2nd Cir.), cert. denied 350 U.S. 913 (1955) .............................. 6

*VIT v. Edwards,
  398 F.3d 313 (4th Cir. 2005) ...................................................................... 12, 14

**STATUTES**

33 U.S.C. § 901 ....................................................................................................... 3

33 U.S.C. § 908(c)(13) ........................................................................................... 16

33 U.S.C. § 910 ................................................................................................. 6, 17

33 U.S.C. § 914(f) .................................................................................................. 15

33 U.S.C. § 928(a) ............................................................................ 7, 14, 15, 16, 19

33 U.S.C. §928(b).......................................... 1, 3, 5, 6, 7, 8, 12, 13, 14, 15, 16, 17, 18

33 U.S.C.A. § 921(b)(3)..................................................................................... 9, 10

13717627v.5 / 71209-000641

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| STEVEN LINCOLN, | ) |
| | ) No. 13-1594 |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| DIRECTOR, OWCP, | ) |
| CERES MARINE TERMINALS, | ) |
| INC., | ) |
| | ) |

Respondents.

### RESPONDENT CERES' RESPONSE BRIEF

The Respondent, Employer Ceres Marine Terminals, Inc. (hereinafter

referred to as "Ceres" or "the Employer"), by its undersigned counsel, respectfully

submits this brief in opposition to Claimant's counsel's appeal of the Benefits

Review Board decision affirming the District Director's decision that the Employer

does not owe Claimant's counsel any attorney fee.  The District Director correctly

found the Employer had accepted the hearing loss claim and paid some

compensation within 30 days of the claim (one week of compensation, a 0.50%

bilateral hearing loss), and thus section 28(b) at the Longshore Act applied.  33

U.S.C. §928(b).  Since the Employer did not reject an OWCP recommendation at

an informal conference, the District Director correctly found the Employer cannot

be liable for Claimant's counsel's attorney fee.

The Claimant could have avoided this issue by simply requesting an informal conference (which rarely last over 30 minutes), the procedure the statute seeks to encourage. Then if the Employer rejected the recommendation of the District Director, the Employer would have been liable for Claimant's counsel's attorney fee. Ironically, the Claimant chastises the Employer for not immediately paying the claim, yet when the claim was filed, the Claimant did not submit the necessary information to pay the claim – the audiogram (hearing test) showing the amount of hearing loss, and wage records so the average weekly wage and compensation rate could be determined. Thus, the Employer could not pay benefits when the claim was filed. Indeed, the case ultimately settled not for the 26% hearing loss shown on the audiogram the Claimant later submitted, but for the 10% hearing loss shown on the IME audiogram the Employer obtained.

In essence, Claimant's counsel wants Ceres to pay his attorney fees for filing a claim with no supporting documentation and then later submitting a grossly inaccurate audiogram. Ceres in fact promptly paid the Claimant based on wage information Ceres obtained, and based on the IME audiogram Ceres conducted and which the Claimant admitted was the accurate hearing test.

## <u>STATEMENT OF ISSUES</u>

1.  Was There Substantial Evidence In Support Of The District Director's Decision?

2

2. Did The District Director Abuse His Discretion In Refusing To Award Attorney Fees To Claimant's Counsel?

3. Did Section 28(b) Apply And Thus Was The Employer Properly Determined Not To Owe Attorney Fees Since The Employer Did Not Reject An Informal Conference Recommendation?

## STATEMENT OF THE CASE

This claim arises under the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901, et seq., (hereinafter collectively referred to as "the Longshore Act").

## STATEMENT OF FACTS

The Claimant, in his statement of facts, falsely states that the Employer denied the Claims citing the Employer's LS-207 form. However, the LS-207 form, dated May 26, 2011, clearly states as the first thing "Ceres accepts claimant's hearing loss as noise-induced." (J.A. at 5). Ceres then notes it needs to determine the average weekly wage and the extent of disability. As Claimant admits in its Brief, the Employer requested subpoenas of the other longshore employers, so Ceres could obtain the Claimant's wage records, and calculate an average weekly wage. (Claimant's Brief at 3-4).

The LS-203 claim form was served on the Employer by the Department of Labor by cover letter dated June 14, 2011. The Employer did NOT file a notice of controversion to deny the claim, but rather to indicate that the Employer accepted the claim, but the Employer needed more information in order to properly pay the

3

claim. The Employer did not pay more than $1,256.84 (0.50% hearing loss) since the Independent Medical Examination ("IME") had yet to be conducted, and thus the Employer was not sure of the extent of disability. However, the Employer clearly paid some compensation within 30 days of service of the claim on the Employer, as the statute requires. It is also undisputed that there was no informal conference, so the Employer never rejected an OWCP recommendation. (J.A. at 24-25).

It should be noted, when the Claimant's LS-203 claim was filed and served, it did not provide an audiogram (hearing test) nor any wage information (J.A. at 20-23.). Thus, Ceres could not pay the Claimant compensation at that time, since the wages of the other longshore employers were not provided with the LS-203 claim, and Ceres had no way to get their wage information except by obtaining subpoenas. Indeed, the Ceres wages were less than 1/4 of the Claimant's ultimate average weekly wage. It is also noteworthy that the Claimant did not submit any audiogram (hearing test) with the Claimant's LS-203 claim (J.A. at 20-23), and moreover, the one he later submitted (J.A. at 6-8) was incredibly inaccurate, as shown by the fact the Claimant settled for less than half the hearing loss shown on that initial audiogram. The audiogram submitted by the Claimant after the claim was filed, shows over a 26% hearing loss (J.A. at 6-8); whereas the case settled for the 10% hearing loss shown on the Employer's IME Dr. Gillespie audiogram.

4

(J.A. at 69-71), which the Claimant accepted as accurate and settled for that amount "Client accepts Gillespie audio[gram]" (J.A. at 81, 26-28).

As the Claimant concedes in his Brief, the District Director found Ceres indicated a clear intent to accept the Claim and Ceres in fact paid some compensation within 30 days of the service of the Claim on the Employer. There is clearly substantial evidence to support this finding, in that in the very first document Ceres filed, it stated "Ceres accepts Claimant's hearing loss in (sic) noise-induced" and Ceres paid a week of compensation within 30 days of service of the claim. (JA at 5 and 24-25).

## SUMMARY OF THE ARGUMENT

The Claimant in his brief argues that the workers' compensation world will come to an end if this Court affirms the decision below. In fact, all that will happen is what Congress intended -- instead of Claimant's counsels rushing to litigation in an attempt to generate attorney fees, they will have to first go to an informal conference before the Department of Labor, and obtain a recommendation by the District Director, a Department of Labor official who is neutral. If the Employer rejects the recommendation of the District Director, then the Employer will be liable for Claimant's counsel's attorney fees. 33 U.S.C. § 928(b).

Claimant's counsel chastises the Employer for not paying the Claim as soon as it was filed. However, Claimant's counsel admits when he filed the Claim, he

5

did not submit an audiogram (hearing test) showing the amount of hearing loss, nor did he submit wage records so the Employer could calculate an average weekly wage, and thus the compensation rate.  In short, the Employer had no idea what amount to pay, even if it wanted to pay the claim without any questions asked.

Longshoremen work for different employers each day.  So an employer will not have all the wage records needed to determine the average weekly wage, 33 U.S.C. § 910, nor know if the employer worked the Claimant last before its audiogram, and thus is the liable employer.  Travelers Insurance Co. v. Cardillo, 225 F.2d 137 (2nd Cir.), cert. denied 350 U.S. 913 (1955), following in Norfolk Shipbuilding and Drydock Corp. v. Faulk, 228 F.3d 378 (4th Cir. 2000) and Newport News Shipbuilding v. Stilley, 243 F.3d 179 (4th Cir. 2001).

Ceres thus did all it could -- it noted it agreed the hearing loss was work related, and noted it was obtaining records to determine if it was the liable employer, as well as determine the amount of the average weekly wage and thus the compensation rate and that Ceres was going to obtain its own hearing test (audiogram) to confirm the extent of disability (J.A. at 5 and 13-19).  Section 28(b) does not envision an employer will automatically accept the Claimant's alleged extent of disability.  To the contrary, it envisions the neutral District Director will hear both sides' evidence, possibly conduct his own IME, and then make a recommendation.  33 U.S.C. § 928(b).

This is exactly what Congress intended. If the employer disputes whether there was a work injury, then under section 28(a), it would be liable for attorney fees if there was in fact an injury. 33 U.S.C. § 928(a). However, if the employer accepts there was a work injury (which Ceres did by agreeing the hearing loss was caused by noise at work), and the employer thus pays "any compensation" within 30 days of service of the claim, then the employer is liable for attorney fees only if the employer rejects a recommendation of the District Director. 33 U.S.C. § 928(b).[1] Interestingly, in citing the statute, the Claimant deleted this critical language in section 28(b). Claimant's Brief at 10.

---

[1] Section 928(a) and (b), 33 U.S.C. 928(a) and (b), provide as followings:

(a)    Attorney's fee; successful prosecution of case. If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this Act, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

(b)    Attorney's fee; successful prosecution for additional compensation; independent medical evaluation of disability controversy; restriction of other assessments. If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 14(a) and (b) of this Act, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation, and

7

Thus, all Claimant's counsel had to do in this case was request an informal conference before the District Director, and then if the Employer rejected the recommendations of the District Director, the Employer would be liable for attorney fees. 33 U.S.C. § 928(b). Congress wisely put in this review by a neutral District Director to provide a quick resolution if possible, and avoid a rush to litigation. Instead, Claimant's counsel refused to engage in this simple but critical step, and he bypassed the informal conference phase by immediately requesting a hearing before an Administrative Law Judge. As such, he should not complain that his failure to follow the statutory steps has led to the Employer not being liable for attorney fees. Indeed, ironically, the Claimant admitted the audiogram showing a 26% hearing loss, which he submitted was inaccurate, and instead he settled for the 10% hearing loss shown on the Employer's Dr. Gillespie IME audiogram.

---

thereafter utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Secretary, as authorized in section 7(e) [33 USC § 907(e)] and offers to tender an amount of compensation based upon the degree or length of disability found by the Independent medical report at such time as an evaluation of disability can be made. If the claimant is successful in review proceedings before the Board or court in any such case an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accord with the above provisions. In all other cases any claim for legal services shall not be assessed against the employer or carrier.

## ARGUMENT

I.    STANDARD OF REVIEW:  THE DISTRICT DIRECTOR'S DECISION
      MUST BE AFFIRMED IF IT IS SUPPORTED BY SUBSTANTIAL
      EVIDENCE IN THE RECORD.  THE DISTRICT DIRECTOR'S
      DISCRETIONARY DETERMINATIONS AND FACTUAL INFERENCES
      CANNOT BE CHALLENGED ON APPEAL

Under the Act, a district director's decision must be affirmed if substantial

evidence exists in the record to support his decision.  Substantial evidence is such

evidence from which one might reasonably draw the conclusion the administrative

law judge reached.  The district director's credibility determinations and factual

inferences are binding on appeal.  That the evidence might allow other inferences,

or that the Court might have reached a different conclusion de novo, is not a

ground for reversing the district director's decision.  The district director, like a

jury, is the trier of fact, and his/her findings, if supported by substantial evidence,

cannot be challenged on appeal.

Section 21(b)(3) sets out the standard of review for a decision of an

administrative law judge:

> The findings of fact in the decision under review
> by the Board shall be conclusive if supported by
> substantial evidence in the record considered as a whole.

33 U.S.C. § 921(b)(3) (1984).

This Court, in Newport News Shipbuilding & Dry Dock Co. v. Director

(Hess), 681 F.2d 938 (4th Cir. 1982), explained the conclusive nature of the

9

findings of fact, and the limited role on review of the Benefits Review Board and the Courts follows:

> Section 21(b)(3) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921(b)(3), makes the findings of the administrative law judge conclusive upon the Board if supported by substantial evidence. If thus supported, the Board is not free to disregard them or draw other inferences which it thinks may be more reasonable. On review here we must determine whether the Board observed the limited scope of review of findings of fact vested in it by the statute. See Walter v. Universal Terminal & Stevedoring Corp., 645 F.2d 170, 172 73 (3d Cir. 1981); Avondale Shipyards, Inc. v. Vinson, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980); Air American, Inc. v. Director, Office of Workers' Compensation Programs, 597 F.2d 773, 776 77 (1st Cir. 1979).

Id. at 941.

A key question is, of course, what is the definition of "substantial evidence." The United States Supreme Court has noted that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Persales, 402 U.S. 389, 401 (1971), citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)(emphasis added).

One of the better discussions of the definition of "substantial evidence" comes from the United States Court of Appeals for the First Circuit's decision in Sprague v. Director, 688 F.2d 862 (1st Cir. 1982), in which the First Circuit

10

affirmed an administrative law judge's determination that a worker's disability was

not occupational in nature:

> Substantial evidence, for purpose of determining
> both whether the employer has rebutted the presumption
> of compensability and whether the ALJ's findings are
> supported on the record as a whole, is "such relevant
> evidence as a reasonable mind might accept as adequate
> to support a conclusion." Parsons Corp. of California v.
> Director, Office of Workers' Comp. Programs, 619 F.2d
> 38, 41 (9th Cir. 1980) (evidence needed to rebut
> presumption); Diamond M. Drilling Co. v. Marshall,
> 577 F.2d 1003, 1006 (5th Cir. 1978) (evidence needed to
> support ALJ's findings). See NLRB v. Columbia
> Enameling and Stamping Co., 306 U.S. 292, 299 300
> (1939) (action under national labor laws); Lizotte v.
> Secretary of Health and Human Services, 654 F.2d 127,
> 128 (1st Cir. 1981) (social security disability benefits).
> Thus substantial evidence means more than a scintilla of
> evidence, but less than a preponderance. Garvey Grain
> Co. v. Director, Office of Workers' Comp. Programs,
> 639 F.2d 366, 370 (7th Cir. 1981) (per curiam); Diamond
> Drilling Co. v. Marshall, 577 F.2d at 1006. In reviewing
> for substantial evidence it is immaterial that the facts
> permit diverse inferences as long as those drawn by the
> ALJ are supported by evidence. Bath Iron Works Corp.
> v. White, 584 F.2d at 573. Similarly, it is irrelevant that
> the appellate court might reach a different conclusion
> than did the ALJ if it were reviewing the record de novo.
> Garvey Grain Co. v. Director, Office of Workers' Comp.
> Programs, 639 F.2d at 370.

Id. at 865 66.

The District Director's decision should be affirmed, if there was more than a

scintilla of evidence in the record supporting his decision. In viewing the

evidence, the District Director's factual inferences are conclusive. Under this

11

standard, or indeed any standard, the District Director's decision should be affirmed.

It should also be noted that attorney fee decisions are reviewed under an abuse of discretion standard. Daly v. Hill, 790 F.2d 1071, 1078-79 (4th Cir. 1986); Ballard v. Schweiker, 724 F.2d 1094, 1098 (4th Cir. 1984). Moreover, as the proponent of an award for attorney fees, the burden of proof is on Claimant's counsel. Director v. Greenwich Colliers, 512 U.S. 267, 114 S. Ct. 2251 (1994); Richard v. Continental Gram Company, 336 F.3d 1103 (9th Cir. 2003).

## II.    THE LACK OF THE REJECTION OF AN INFORMAL CONFERENCE RECOMMENDATION PRECLUDES AN ATTORNEY FEE AWARD

No attorney fee could be assessed against Ceres because Ceres did not reject an OWCP informal conference recommendation. Ceres accepted the injury as compensable and paid some compensation within 30 days of service of the claim, and thus this case falls under section 28(b) of the Longshore Act. 33 U.S.C. §928(b). This Court, as well as the Fifth and Sixth Circuits, have followed the clear language of the Longshore Act, which is clear that without an informal conference recommendation being rejected, no attorney fee can be assessed against an employer. 33 U.S.C. § 928(b); VIT v. Edwards, 398 F.3d 313 (4th Cir. 2005); Pittsburgh Conneaut Dock Co. v. Director, 473 F.3d 253 (6th Cir. 2006); FMC Corp. v. Perez, 128 F.3d 908 (5th Cir. 1997); Andrepont v. Murphy Exploration and Production, 566 F.3d 415 (5th Cir. 2009. The Benefits Review Board, in

12

Davis v. Eller Co., 41 B.R.B.S. 58 (2007), has made clear that it now follows this rule as well.

Since Ceres did not reject an informal conference recommendation, no attorney fee can be assessed against Ceres. Claimant's counsel argues that a payment of compensation for a 0.50% hearing loss is not enough to trigger section 28(b). However, in Meszaros v. Federal Marine Terminals, BRB No. 10-0589 (2011) (J.A. at 49-58), the employer paid only 2 weeks compensation for a rating which merited over 23 weeks, and the Board held that the case still fell under section 28(b). Indeed, section 28(b) merely states that "any" compensation be paid, it does not require any minimum payment. The Employer herein paid a rating of a 0.50% hearing loss. That rating might well have been correct, depending on the results of the subsequent IME. Section 28(b) does not require that the Employer pay the right amount of disability benefits, but rather that the Employer pay some disability benefits, and then disputes the extent of disability. That is exactly what Ceres did herein. Indeed, Ceres had to obtain the average weekly wage information, which the Claimant failed to submit with the LS-203 Claim.

The District Director found that the Employer accepted the Claim, and paid the Claimant some compensation within 30 days. There was clearly substantial evidence to support that finding. While the Employer initially filed a LS-207

13

before the claim was served on it, the Employer did NOT controvert whether the injury was caused by work. To the contrary, the Employer clearly stated the Employer accepted the hearing loss claim as being due to noise at work. The Employer clearly stated it just needed more information to know what amount to pay. The Employer then paid some compensation within 30 days of the service of the Claim on the Employer, exactly what section 28(b) requires.

With all due respect to the Claimant, he simply ignores the clear wording of section 28(a) of the Longshore Act. It clearly states it only applies: "If the employer or carrier decline to pay <u>any</u> compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner…." 33 U.S.C. § 928(a). It is hard to imagine how the word "any" could be any clearer. Claimant's argument that the phrase "any compensation" is unclear (Claimant's Brief at 16-17) is obviously meritless.[2]

The Claimant also argues that what section 28(a) refers to is the Employer not paying a claim in full (Claimant's Brief at 20). Not only is that turning the wording on its head, it makes no sense. If that was the case, and section 28(b) only

---

[2] Claimant's citation to cases decided before <u>VIT v. Edwards</u>, 398 F.3d 313 (4th Cir. 2005) is inappropriate. Admitted, before the VIT ruling, there were decisions refusing to follow the clear language of section 28. The Court in <u>VIT</u> pointed out the error in such attempts to "interpret" the clear wording in section 28. The Claimant herein ignores the teaching of <u>VIT v. Edwards,</u> and again asks for an "interpretation" of clear statutory language (indeed, it was the same Claimant's counsel in the VIT case).

applies when an employer pays a claim in full, then why would the informal conference referenced in section 28(b) be necessary?

The Claimant tries to insert section 14 and the notice of controversion requirement into section 28 (a) of the Act. However, if one looks at section 28(a) of the Act, it makes no mention of section 14(f) or the filing of a notice of controversion. To the contrary, section 14(f) and section 28(a) are completely separate. It is noteworthy that while section 14(f) requires the employer to file a notice of controversion within 14(f) days of notice of the injury, 33 U.S.C. § 914(f), that is NOT the trigger that section 28(a) is tied to. Claimant's counsel ignores the fact that section 28(a) makes no mention of section 14(f), or a notice of controversion, or notice of an injury. Rather, section 28(a) is tied to the date of service of the LS-203 claim on the employer, and allows the employer 30 days from that date to accept the claim and pay some compensation. 33 U.S.C.§ 928(a).

This issue was before the United States Court of Appeals for the Fifth Circuit in Andrepont v. Murphy Exploration and Production Co., 566 F.3d 415 (5th Cir. 2009). The Fifth Circuit noted as follows:

> "As stated plainly in the statute, the relevant period for determining if the employer has tendered some compensation is the thirty days after the filing of the written claim. Accordingly, if the employer pays some partial compensation during those thirty days, thereby admitting to liability for the injury, section 928(a) does not apply."

Id. at 419.

When the Claim was served in this case, Ceres did NOT file a LS-207 in response to the Claim, but rather Ceres paid one week of compensation (which is a 0.50% hearing loss rating) within 30 days of the service of the Claim, exactly what section 28(a) requires, to transfer the case to section 28(b).  33 U.S.C.§ 928(b).  Thus, the District Director's findings of fact supports that this case falls under section 28(b), and not section 28(a).

The Claimant cites to Green v. Ceres Marine Terminals, 43 BRBS 173 (2010), rev'd on other grounds, 656 F.3d 235 (4th Cir. 2011), wherein the Benefits Review Board found payment of $1.00 before the service of the claim did not trigger section 28(b).  The problem with the employer's actions in Green was the payment was before service of the claim, and arguably $1.00 is not a recognized compensation rate.  However, like the Board's decision in Meszaros v. Federal Marine Terminals, BRB No. 10-0589 (2011) case (J.A. at 49-58), herein Ceres paid a recognized compensation rate -- one week of compensation at the maximum compensation rate, which equals a 0.50% bilateral hearing loss, 33 U.S.C. § 908(c)(13), and the payment was after service of the claim.

The Claimant attacks Ceres' conduct as shameless and inappropriate.  This is a rather odd complaint from a claimant who submitted a hearing loss claim with no audiogram (hearing test) and no average weekly wage information, thus making

16

it impossible for Ceres to pay him compensation.[3]  Moreover, the Claimant admitted the audiogram he later submitted was inaccurate, and the IME audiogram Ceres obtained was accurate.

The Claimant also alleges Ceres is trying to frustrate the purpose of the Longshore Act.  However, the purpose of section 28 is to encourage informal conferences to resolve claims.  In short, if the employer denies there was an injury, then there is no purpose in having an informal conference - there is no basis for compromise.  However, if the employer accepts there was an injury, and the issue is extent of disability or other issues, then Congress wanted to try to obtain a resolution without litigation.  To accomplish that, Congress required a simple task of the claimant - go to an informal conference before a neutral, the District Director.  Then if the employer rejected the District Director's recommendation and litigation was required, then attorney fees could be assessed against the employer. 33 U.S.C. §928(b).

Thus, it is the Claimant who is trying to frustrate the intent of the Longshore Act, by bypassing the informal conference process, which is designed to reduce litigation and legal fees.  Indeed, Claimant's counsel's conduct was not designed to provide the Claimant with quick compensation (since that would require

---

[3] The Claimant later submitted 2010 W-2 forms (J.A. at 61-67), but they could not be used.  To calculate an average weekly wage, wages one year before the 4/11/11 audiogram were needed 33 U.S.C. § 910.  Those are the wages Ceres subpoenaed (J.A. at 13-19).

17

submission of an audiogram and average weekly wage compensation rate information), but rather was designed to maximize attorney fees. It was Ceres, who quickly requested subpoenas for wage records, so the average weekly wage and compensation rate could be calculated (the Claimant of course with a release signed by him, could have obtained his wage records without the use of a subpoena), and Ceres subpoenaed necessary medical records, and set up an IME to obtain an accurate hearing test. (J.A. at 13-19).

Finally, it is also noteworthy that the Claimant could have avoided the result in this case, by simply requesting an informal conference, hardly an onerous requirement. Instead, Claimant's counsel foolishly filed a form LS-18 requesting a hearing, without first requesting an informal conference.

The Claimant argues Longshore cases are litigated for years (Claimant's Brief at 12). Not only is that inaccurate, the Claimant could have avoided litigation by simply requesting an informal conference. Those are normally held within 30 days of a request, and rarely last over 30 minutes. At that point, the employer would have to either accept the District Director's recommendation as to what the claimant is due and pay it, or then the employer would be liable for claimant's attorney fees if it litigated the case and lost. 33 U.S.C. § 928(b).

The Claimant cites to a statement of Justice Ginsburg, in the case of <u>Roberts v. Sea-Land Services, Inc.</u>, 132 S.Ct. 1350, 182 L. Ed. 2d 341 (2012), but that case

18

had nothing to do with Section 28 of the Longshore Act. Moreover, Justice Ginsburg cites to the action of a "claims examiner" who are under the District Director, essentially referring to the informal conference process. Id. at S.Ct. 1366 n.4. Finally, of course, Justice Ginsburg was providing a dissenting opinion, disagreeing with the majority's view, and thus her statement does not reflect the United States Supreme Court's view.

The Claimant argues that under section 28, an employer must make a "reasonable effort" to pay the correct compensation, or be liable for attorney fees. Claimant's Brief at 14. Congress could have said that, but did not. Instead, Congress said the employer merely must pay "any compensation" and then follow the District Director's recommendations after an informal conference. 33 U.S.C. § 928(a) and (b). All the Claimant had to do in this case was request an informal conference, and if the District Director found the Claimant's evidence supported his claim, then Ceres would have to pay what the District Director recommended, or be liable for attorney fees if Ceres litigated the case.

That is what Congress clearly said, and the failure in this case was Claimant's counsel's refusal to do the simple task of requesting an informal conference. The request could have been a one-sentence letter and informal conferences rarely last over 30 minutes. Of course, at the informal conference, the

19

Claimant would have to present the very evidence Ceres itself had to obtained – average weekly wage information and a valid/accurate audiogram (hearing test).

Claimant counsel claims that Ceres is "denying every claim ..." (Claimant's Brief at 15). That is simply untrue. The vast majority of injuries by Ceres' employees are voluntarily paid and claimants do not retain counsel. Ceres simply accepts an injury, promptly obtains average weekly wage injury, and pays compensation based on doctor's notes from physicians the claimants select.

In contrast here, the Claimant retained counsel before Ceres even knew there was an injury (hearing loss) and Claimant's counsel filed a claim which he knew Ceres could not pay since there was no audiogram (hearing test) showing the extent of disability and no average weekly wage information from which to calculate a compensation rate (J.A. at 20-23). The Claimant then later submitted an inaccurate audiogram, and ultimately agreed the audiogram Ceres obtained was the accurate one. It is hard to imagine Congress intended to encourage such behavior by a claimant, and let alone reward it by assessing attorney fees against the employer.

## CONCLUSION

The decision denying attorney fees be assessed against Ceres should be

affirmed.

Respectfully submitted,

CERES MARINE TERMINALS

By: _____

      Lawrence P. Postol
      Its Attorney

SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004-1454
(202) 463-2400

Dated:  July 10, 2013

21

CERTIFICATE OF SERVICE

I certify that two copies of the foregoing RESPONSE BRIEF OF

RESPONDENT CERES was served, via first class, postage prepaid this 10th day

of July, 2013, upon:

Gregory E. Camden, Esquire
Montagna, Klein & Camden
425 Monticello Avenue
Norfolk, VA  23510

Mark A. Reinhalter, Esquire
Rita Roppolo, Esquire
Office of the Solicitor
U.S. Department of Labor
Suite N-2117, NDOL
200 Constitution Avenue, NW
Washington, DC  20210

Lawrence P. Postol

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>13-1594</u>      Caption:  <u>Steven Lincoln vs. Director, et al.</u>

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) AND 32(a)**
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed.R.App.P.
     32(a)(7)(B) because:

*[principal brief may not exceed 14,000 words or 1,300 lines; reply or amicus brief
may not exceed 7,000 words or 650 lines; line count can be used only with
monospaced type]*

&#9747;   this brief contains <u>6,606</u> words, excluding the parts of the brief
         exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐   this brief uses a monospaced typeface and contains _____ *[state the
         number of]* lines of text, excluding the parts of the brief exempted by
         Fed.R.App.P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5)
     and the type style requirements of Fed.R.App.P. 32(a)(6) because:

*[14 point font must be used with proportional typeface, such as Times New Roman
or CG Times; 12 point font must be used with monospaced typeface, such as
Courier or Courier New]*

&#9747;   this brief has been prepared in a proportionally spaced typeface using
         Windows 7, Microsoft Word 2010 in Regular 14 Times New Roman
         type style*; or*

☐   this brief has been prepared in a monospaced typeface using
         _____  _____ [state name and
         version of word processing program] with _____
         [state number of characters per inch and name of type style].

_____

Attorney for <u>Respondent Ceres</u>

Dated: _____7/10/13_____